## Churcher *versus* Guernsey.

*Notice of outstanding Title.—Admissions of Purchaser, how far Evidence of.—Equitable Right of Vendee under naked unexecuted Contract for Sale.—Abandonment of unexecuted Agreement.*

A., by articles of agreement, contracted to buy land from trustees, to pay by instalments, and that for default of payment or abandonment for six months, the contract was to be void and the vendors were to re-enter and resell: he took possession, but made no payments in his lifetime, nor were any made after his death, by his widow and children, who afterwards abandoned the land, which was resold by the trustees. Subsequently, it was sold under judgment against A., and the vendee of the sheriff brought ejectment against B., the owner of the land under a deed from the vendee of the trustees, on the ground of notice of A.'s title: *Held,* that B.'s admissions, after the purchase, that he feared that something was wrong in his title, did not prove knowledge and notice in him of A.'s title, prior to his purchase; and that even if they had been notice, neither A. nor his assignee by sheriff's sale had a title which equity would enforce.

ERROR to the Common Pleas of *Tioga county.*

[Churcher v. Guernsey.]

This was an ejectment, brought July 21st 1856, by John W. Guernsey against David Churcher and R. W. Churcher, for a tract of land in Jackson township, containing fifty-four acres and thirteen-hundredths.

Under the charge of the court below there was a verdict and judgment in favour of the plaintiff, whereupon the defendants sued out this writ, and assigned for error here the instructions of the court under which the verdict was rendered.

The case was argued by *Lowry* and *Wilson*, for plaintiffs in error, and by *Cone* and *Williams*, for defendant. All the material facts of the case, and the charge of the court, so far as it was complained of by the plaintiff, are contained in the opinion of this court, which was delivered, May 6th 1861, by

THOMPSON, J.—Both parties in this ejectment claim under the Bingham trustees, the holders of the original title. The plaintiff claimed as a purchaser at sheriff's sale of the land as the property of one H. C. Jackson, who had, by articles of agreement, contracted to buy it from the trustees, in October 1850. He was to pay for it in seven annual instalments, and to pay the interest annually, and in default whereof, or of abandonment for six months, as also for other causes mentioned in the agreement, the contract was to be void, and the vendors have the right to re-enter, hold, and enjoy, or resell at pleasure. Jackson took possession about the date of the contract, paid no purchase-money, and died in July 1852. His widow and children paid nothing, abandoned the land soon after, and went west, and have never claimed any interest in it since.

In May 1852, the trustees having sold the tract, with other lands of the estate, to Henry H. Dent, and handed over to him their contracts, he went on to the premises, found the possession vacant; learned that Jackson was dead, and that his family had abandoned the premises, and gone west to live. He thereupon cancelled the articles with Jackson, entered into possession, leased it to a tenant, and afterwards, in August 1853, sold it to David Churcher, one of the defendants, for $900—five hundred in hand, and the balance in three annual instalments. The vendees took possession, made valuable improvements, paid the balance of the purchase-money, and received a deed for the land.

It seems that while Jackson was in possession, a judgment was obtained by one Winter against Andrew Jackson his son, and himself, for a debt of the former. That nothing was done to recover it until in December 1854, sixteen months after the purchase of Churcher, when a judgment being obtained against an administrator, raised undoubtedly for the ·purpose, the land

[Churcher *v.* Guernsey.]

was sold on this judgment, and the plaintiff below became the purchaser, and in 1856 brought this suit.

The court below thought the plaintiff was entitled to recover on this title, notwithstanding the non-payment of the purchase-money ; the abandonment of the land by Jackson's family ; their non-claim ever afterwards, and without an offer to pay the purchase-money by the sheriff's vendee ; notwithstanding the remedy for the default of payment or abandonment, provided for in the agreement, had been resorted to, and the legal possession regained by the vendors.    The sole ground relied on by the learned judge, to arrive at this conclusion, was that of a supposed notice to the purchaser of an interest in Jackson's heirs at the time of his purchase.

Passing by, for the present, other grounds of defence, and taking it as assumed, that notice of Jackson's equity would be sufficient to turn the purchaser into a trustee of the title for his heirs and creditors, was there such notice ?

Anything that would put a prudent man upon inquiry, it has often been held, is equivalent to notice.    It is not easy, at all times, to define what circumstances should have this effect. Recitals in the title of the vendor, or discrepancies, or possession of the premises, and *the like*, have, in turn, often been held sufficient to put a party on inquiry.    But rumours are neither notice, nor the ground-work for the required inquiry: Jaques *v.* Weeks, 7 Watts 261; Kerns *v.* Swope, 2 Id. 75; Tolland *v.* Standbridge, 3 Ves. 478; Dougherty *v.* Darrach, 3 Harris 399. Actual notice must be by direct information from a person who has an interest in the estate, or who may be affected by the purchase : 1 Rawle 370.    A consequence of this is, that notice from an unauthorized party, or one having no interest, is mere rumour, and "an inquiry into the foundation of mere rumours would, in most cases, be a vain and impracticable pursuit:" Per Sergeant, J., Jaques *v.* Weeks, 7 Watts 261.

The evidence here was of admissions by the purchaser long after his purchase — the most dangerous, and certainly the most unreliable, of all species of evidence.    A man is not permitted to talk away his rights, but if he can do so by mere conversations, they should in every respect be sufficient for the purpose, and most clearly proved.    These elements were wanting in this case.    Inscho testified that, in a conversation with Churcher, he (the witness) told him "that Dent had offered the land a year before to Wright for $600, and he (Churcher) told me he could have bought it for $700, if he would buy Dent's interest : or Dent asked him $900, and he would defend the title : he chose to have it free and clear, and know what he was paying for, rather than to buy trouble."    He further stated that Churcher spoke of a claim he *had fears* of; but what it was, and

[Churcher v. Guernsey.]

how he got this knowledge, the witness did not know. "Think," said the witness, "he spoke of a city debt—a debt against Jackson; think he had been security for his son, and thinks that this was the claim he spoke of as having a guarantee against."

There was nothing like an admission of notice of title in Jackson, prior to his purchase in this; and such evidence should not have been submitted as sufficient to turn a purchaser out of his purchase into a mere trustee. Fears expressed, do not prove knowledge and notice. Neither one is to be inferred alone from such sources. Many a purchaser refuses to take the best of titles without a warranty, and why? Because they have fears, doubtless; but it would be a dangerous doctrine which would apply vague fears as notice of any claim which might arise, although unknown and unsuspected at the time of the demand of a warranty. But again, his fear of the judgment against Jackson did not necessarily imply that he had notice of title in Jackson. He may have feared just what came to pass—that without any title whatever in Jackson, some one might disturb him with it. The testimony should have been held entirely insufficient to establish notice to Churcher of title in Jackson, and excluded from the jury altogether. We think, therefore, the court erred in charging that if believed by the jury, it was proof of notice of Jackson's title, and that the plaintiff might recover.

But suppose it be conceded that it was notice: what title had Jackson or his assignee by the sheriff's sale, when suit was brought? His title rested on an executory contract, not complied with either by payment of money, improvements, or possession retained. Five years of dereliction of the possession had occurred, and a failure to pay a cent of money on an instalment due for that length of time, as well as intermediate instalments falling due, and possession retaken and occupied all that time by the assignee of the vendors. Equity would not restore a vendee to possession, under a naked unexecuted contract, after such a lapse of time. The vendee, and so of his representatives, under such circumstances, must show themselves ready, prompt, and eager to comply with the contract: if not, although time be not expressly made the essence of the contract, equity will leave them to their action at law for any supposed injury arising from the refusal of the vendor to comply. This is an admitted principle of equity when a party is not in possession of the land purchased, and seeks to get in, and is to be found fully recognised in the books: Sugden on Vendors 246; Youst v. Martin, 3 S. & R. 429; Peebles v. Reading, 8 Id. 483; and in very many cases since. Here was five years' default of the vendee and the claimant of his title, at the time of the suit brought; and conceding that as purchaser at the sheriff's sale, he stood in Jackson's shoes, it was too late to claim a specific exe-

[*Churcher v.* Guernsey.]

cution of the contract, the vendor having acted on the contract as rescinded and re-entered. But a recovery, even then, was allowed in the court below, without an offer to pay. Had but one day expired, instead of five years, and Jackson's family had abandoned the premises and left the country, without an intention to return, and the possession had been fairly resumed by the vendors, the sheriff's vendee could not have availed himself of Jackson's contract, and turned the vendor out without doing equity by tendering or offering to pay what was due. This would be the law in the absence of a contract to that effect. The widow and children are not appealing to equity to relieve them against delay occasioned by death and untoward circumstances. They are making no claim to the land, and an appeal in their names raises no equity in favour of a party who does not stand in their shoes, but only as a creditor of Jackson, and who could only have made his lien available by such prompt action and payment, as Jackson was bound to make.

But in addition to all this, the parties did make not only time of the essence of the contract, but possession of the premises as stipulated for by the purchaser, also. They might lawfully do this, and their representatives would be bound by the stipulation. The vendors have acted on it, and the vendees have not gainsayed it. There was no waiver of time either in the payment or the requirement to keep possession in favour of the widow and heirs: but, if there had been, this would not have operated as a dispensation altogether with the condition, either in their favour or in the favour of creditors. This consideration alone should have been sufficient to have determined the case against the plaintiff below. But we need not examine the case further. We think the court erred, and that the second, third, fourth, fifth, seventh, eighth, ninth, and tenth erorrs are sustained, and the judgment must be reversed for the reasons given.

Judgment reversed, and a *venire de novo* awarded.